```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

| | | |
|---|---|---|
| DP WAGNER MANUFACTURING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4610 |
| | § | |
| PRO PATCH SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM AND ORDER</u>
<u>AND NEW TRIAL DOCKET CALL DATE</u>

The background for this suit and identities of the parties may be found in the Court's Memorandum and Order entered April 21, 2006. Now pending are the following: Defendant Pro Patch Systems, Inc.'s Motion in Limine on DP Wagner's Lanham Act and Common Law Unfair Competition Claims or, in the Alternative, Motion to Certify Interlocutory Appeal and Stay Proceedings (Document No. 51), Motion in Limine to Bifurcate (Document No. 52), Motion in Limine (Document No. 53),[1] and Motion in Limine for Subsequent Trial, if

---

[1] During the May Docket Call, the Court denied in part Pro Patch's Motion in Limine (Document No. 53) with respect to Pro Patch's personal jurisdiction defense, which the Court determined to have been waived. *See* <u>PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)</u>, 260 F.3d 453, 460 (5th Cir. 2001) ("[A] party may waive any jurisdictional objections if its conduct does 'not reflect a continuing objection to the power of the court to act over the defendant's person.'"); <u>Schwartz v. M/V Gulf Supplier</u>, 116 F. Supp. 2d 831, 835 (S.D. Tex. 2000) (holding that defendant waived personal jurisdiction defense by waiting nine months to bring a motion to dismiss, during which time it engaged in a considerable amount of pretrial activity). The Court carried the motion with respect to the remaining arguments, which the Court addresses here.

Necessary, on Exemplary or Punitive Damages (Document No. 63); and Plaintiff DP Wagner Manufacturing Inc.'s Motion in Limine to Exclude Pro Patch's Witnesses Pursuant to Rule 37 (Document No. 55) and Motion in Limine (Document No. 56).  After having carefully considered the motions, responses, reply, and the applicable law, the Court concludes as follows:

A.   <u>Pro Patch's Motion in Limine on DP Wagner's Lanham Act and Common Law Unfair Competition Claims or, in the Alternative, Motion to Certify Interlocutory Appeal and Stay Proceedings</u>

   1.   <u>Preemption</u>

Pro Patch argues that because DP Wagner's Lanham Act and Texas law claims of false advertising and unfair competition are premised on the same facts upon which DP Wagner's Patent Act claim is premised--<u>i.e.</u>, false marking--those claims are preempted by the Patent Act.  Alternatively, Pro Patch argues that because statements made regarding one's patent rights are conditionally privileged under the patent law, one cannot be held liable for false statements under the Lanham Act unless such statements are made in bad faith.  Because DP Wagner has neither alleged nor presented any affirmative evidence of bad faith, Pro Patch argues, the Lanham Act claim fails as a matter of law.

   DP Wagner responds that (1) the motion is an untimely attempt to seek dispositive relief, and Pro Patch has not shown good cause to amend the scheduling order to permit the belated motion; (2) the

2

affirmative defense of preemption was not pleaded in Pro Patch's answer; and (3) the Patent Act does not preempt DP Wagner's claims under the Lanham Act and Texas law.

Although this motion in limine does seek dispositive relief well after the dispositive motion deadline, both the motion and DP Wagner's response raise questions of law that may be more efficiently decided before trial rather than at the close of Plaintiff's evidence or after all the evidence is closed in what the parties have estimated will be a two- to three-day trial. *See* Eischeid v. Dover Constr., 217 F.R.D. 448, 454-56 (N.D. Iowa 2003) (finding that "good cause" within the meaning of R. 16(b) existed for extending the dispositive motion deadline where belated summary judgment motion raised legal issues that the court "must inevitably address, either prior to or in the course of trial" and where the proffered dispositive motion "might present the most efficient method for addressing the legal issues presented").

Preemption by federal patent law is an affirmative defense. *See, e.g.*, Univ. of Colo. Foundation, Inc. v. Am. Cyanamid Co., 196 F.3d 1366, 1370 (Fed. Cir. 1999) ("As affirmative defenses, Cyanamid asserted that the doctrines of preemption by federal patent law, laches, and limitations under relevant statutes barred the University's claims."). Regional circuit law governs the question of waiver of a defense. Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1376 (Fed. Cir. 2005). In the Fifth

Circuit, "[a]lthough failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading 'generally results in a waiver . . .' [w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal.' Thus, a defendant does not waive an affirmative defense if he 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." Giles v. Gen. Elec. Co., 245 F.3d 474, 491-92 (5th Cir. 2001) (holding that the district court properly allowed the defendant, who asserted the disputed defense as a contested issue of law in the joint pretrial order, to pursue the defense despite the defendant's failure to comply with Rule 8(c)).

The Federal Circuit recently upheld a Michigan district court's determination that a defendant who raised a preemption defense for the first time in a motion in limine had not waived the defense by failing to plead it in the answer. *See* Ultra-Precision, 411 F.3d at 1376-77. Because the district court afforded the plaintiff an opportunity to respond to the preemption argument through both briefing and oral argument, the Federal Circuit concluded that the district court's ruling was in accordance with Sixth Circuit law, which, much like Fifth Circuit law, permits affirmative defenses not asserted in an answer to proceed so long

as the plaintiff has the opportunity fully to respond to and brief the issue and is not unfairly prejudiced.

In this case, Pro Patch listed the preemption defense as a contested issue of law in its portion of the Pretrial Order filed on April 28, 2006, and renewed the defense in a motion in limine that was filed on May 4, 2006.  DP Wagner promptly filed a response, and the Court heard oral arguments on the issue on May 15, 2006.  Thus, although Pro Patch did not assert preemption in its answer, Pro Patch raised the issue in a pragmatically sufficient time and DP Wagner has had opportunity fully to brief and respond to the issue and is not unfairly prejudiced.  Accordingly, the Court will permit the preemption defense to proceed.

The Federal Circuit has not held whether § 292 of the Patent Act preempts state law unfair competition claims, and conflicts with Lanham Act claims, when there is a marking of products with inapplicable patents.  At least one district court has concluded that such claims are preempted unless the plaintiff proves that the defendant acted in bad faith.  *See* Moore N. Am., Inc. v. Poser Business Forms, Inc., No. Civ. A. 97-712, 2000 WL 1480992, at *2, 5-7 (D. Del. Sept. 29, 2000) (holding that Lanham Act and state law unfair competition claims premised on false patent marking were not preempted by the Patent Act because the proponent alleged that the mismarking was done in bad faith) (relying on Hunter Douglas, Inc.

v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998), *rev'd in part on other grounds*, Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999)); *accord* Clontech Labs., Inc. v. Invitrogen Corp., 263 F. Supp. 2d 780, 794-95 (D. Del. 2003), *rev'd in part on other grounds*, 406 F.3d 1347 (Fed. Cir. 2005).

In Hunter Douglas, the Federal Circuit explained that "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." Hunter Douglas, 153 F.3d at 1336. "Indeed, Title 35 authorizes patentholders to 'give notice to the public that the [patented article] is patented' and makes marking or specific notice of the patent to the accused infringer a prerequisite to the recovery of damages," and "such conduct may not be the subject of state tort liability." Id. (quoting 35 U.S.C. § 287). "Accordingly, in a case involving a patentholder's conduct in obtaining or publicizing its patent, if the plaintiff were to fail to allege . . . bad faith in the publication of a patent, then the complaint would be dismissed for failure to state a claim upon which relief can be granted because of federal preemption. If the claim were sufficient but the proof were not to show such conduct, then the claim would fail on the merits." Id. "Although to state and maintain a claim under a state tort law, a plaintiff may not be required to allege or prove that the

6

patentholder . . . acted in bad faith in the marketplace, to escape preemption, the plaintiff would need to allege and prove ultimately such conduct." Id. at 1337.  In other words, "to avoid preemption, 'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.'"  Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999).  "To require less would impermissibly alter the balance between the competing purposes of federal patent law that Congress has proscribed."  Hunter Douglas, 153 F.3d at 1337. Likewise, "before a patentee may be held liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patent, . . . the marketplace activity must have been undertaken in bad faith." Zenith, 182 F.3d at 1353.  This bad faith requirement "is in addition to the elements required by § 43(a) itself."  Id. (citations omitted).[2]

---

[2] The elements of a § 43(a) false advertising claim are: (1) that the defendant has made a false or misleading statement of fact concerning his product or another's; (2) that the statement actually or tends to deceive a substantial portion of the intended audience; (3) that the statement is material in that it is likely to influence purchasing decisions; (4) that the product traveled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. See Logan v. Burgers Ozark Country Cured Hams, Inc., 263 F.3d 447, 462 (5th Cir. 2001).

Although <u>Hunter Douglas</u>, <u>Zenith</u>, and <u>Globetrotter</u> all involved state law tort and/or Lanham Act claims premised on a patentholder's communications asserting infringement of its patent and warning alleged infringers and their customers about potential litigation, the reasoning in those cases appears equally applicable to claims related to over-marking one's products, given that (1) the Patent Act imposes a duty upon patentees to mark their products in order to recover damages for infringement, and (2) a patentholder is not liable under the Patent Act for mismarking its products absent an intent to deceive.  To impose state law or Lanham Act liability on a patentholder for less than bad faith mismarking would penalize patentholders for engaging in conduct that the Patent Act does not proscribe and would therefore impermissibly conflict with federal patent law.  Thus, to prevail on its Lanham Act and state law unfair competition claims, DP Wagner must prove that Pro Patch's mismarkings were made in bad faith.

Contrary to Pro Patch's assertion, however, DP Wagner has adequately pleaded that Pro Patch's mismarkings were made in bad faith.  Although DP Wagner does not use the words "bad faith," DP Wagner does allege that Pro Patch marked its products with inapplicable patents despite knowing that those patents did not cover the marked products.  Such conduct, if true, would be evidence of bad faith.  *Cf.* <u>Zenith</u>, 182 F.3d at 1354 (stating that

while "[e]xactly what constitutes bad faith [is] to be determined on a case by case basis," where a "patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representation is made out").  Thus, under the liberal rules of notice pleading, Pro Patch has been sufficiently provided with fair notice of the material points of DP Wagner's claims, including the facts that DP Wagner contends evidence bad faith, and DP Wagner's Lanham Act and unfair competition claims may therefore proceed to trial.

    2.   <u>Certification for Interlocutory Appeal</u>

Alternatively, Pro Patch asks the Court to certify an interlocutory appeal of the ruling on DP Wagner's false marking claim under § 292 of the Patent Act.  Piecemeal appeals are generally not favored.  Pro Patch does not contend that it will suffer any harm by perfecting its appeal at the conclusion of what the parties agree will be a relatively short two- to three-day trial, nor does Pro Patch advance any other compelling reason for an interlocutory appeal.  Accordingly, the request for certification on an interlocutory appeal will be denied.

B.   <u>Pro Patch's Motion in Limine to Bifurcate</u>

Pro Patch requests that the Court bifurcate the trial as follows: (1) a bench trial on the amount to be paid by Pro Patch

for the false marking violations; and (2) a jury trial on the issues of liability and damages under DP Wagner's remaining counts. Bifurcation is unnecessary.  Upon completion of the jury trial on DP Wagner's remaining claims, the Court will hold a hearing to assess the penalty to be awarded to DP Wagner under § 292 of the Patent Act.  If there is evidence that was not relevant to jury trial but has bearing on the § 292 penalty, that evidence may be introduced at the post-jury trial hearing.

C.   Pro Patch's Motion in Limine

   1.   Unfair Competition Claim

Pro Patch argues that DP Wagner's unfair competition claim fails as a matter of law because (1) unfair competition is a "piggy-back" tort, applying only when the defendant has committed a related, independent tort, and false marking in violation of the Patent Act is not a tort and does not provide a basis for a claim of unfair competition; and (2) unfair competition is governed by the law of the state wherein the cause of action arises, and here, the facts giving rise to the unfair competition claim (the mismarking) occurred in Illinois, not in Texas.  Thus, Pro Patch argues, the unfair competition claim should be dismissed.

"Unfair competition under Texas law 'is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial

10

or commercial matters.'" Taylor Publ'g Co. v. Jostens, Inc., 216 F.3d 465, 486 (5th Cir. 2000) (quoting Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F. 2d 3, 14 (5th Cir. 1974)). The tort requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business. Taylor, 216 F.3d at 486. Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort. Id. ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'"). "Thus, unfair competition functions like a 'piggy-back' tort, applying only when the court finds that a related, independent tort has been committed." Healthpoint, Ltd. v. River's Edge Pharms., LLC, 2005 WL 356839, at *3 (W.D. Tex. Feb. 14, 2005).

Whether a violation of § 292 of the Patent Act is the sort of illegal conduct that would support an unfair competition claim is an issue that has not been addressed by the courts. The Court need not decide the issue here, however, because DP Wagner has also asserted a false advertising claim under the Lanham Act, which courts agree can support a state law unfair competition claim. *See* Laughlin Prod., Inc. v. ETS, Inc., 257 F. Supp. 2d 863, 871-72 (N.D. Tex. 2002); Healthpoint, 2005 WL 356839, at *4; *cf.* Decorative Ctr. of Houston, LP v. Direct Response Pubs., Inc., 208 F. Supp. 2d 719, 735, n.32 (S.D. Tex. 2002) (Atlas, J.) (declining to

decide whether a Lanham Act violation, or any other statutory violation, could satisfy the illegal act requirement of an unfair competition claim, but noting that the Fifth Circuit has used "very broad general language to describe the tort of unfair competition").

With respect to Pro Patch's second argument, "[u]nfair competition . . . is a tort and is governed by the law of the state wherein the cause of action arises." Bell v. Starbucks U.S. Brands Corp., 389 F. Supp.2d 766, 778 (S.D. Tex. 2005) (Kent, J.) (quoting Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co., 695 S.W.2d 75, 78 (Tex. App.--San Antonio 1985). Contrary to Pro Patch's contention, however, DP Wagner's unfair competition claim does not arise in the state where the release liner was produced and affixed to the wall patches (i.e., Illinois); rather, the cause of action arose where the effects of the unfair competition were felt (i.e., where the products were sold and hence, where the customer confusion occurred). Because DP Wagner alleges that Pro Patch's products were sold and distributed in Texas, DP Wagner's unfair competition claim arose in Texas and is governed by Texas law.

In sum, Pro Patch has not demonstrated that DP Wagner's unfair competition claim fails as a matter of law, and Pro Patch's motion in limine in this regard will be denied.

2.   <u>Construction of the '391 Patent</u>

Pro Patch's arguments regarding the '391 patent are moot in view of the Court's claim construction hearing and order that will follow.

3.   <u>The Clontech Decision</u>

Pro Patch requests permission to argue to the jury that the law prior to July 2005 (i.e., the date of the <u>Clontech</u> decision) was that the false marking statute applied only to products not covered by at least one of the patents with which they were marked. Short of arguing to the jury that the law was otherwise before <u>Clontech</u>, there may be circumstances in which mention of the decision would be relevant, such as in the context of (1) evidence that Pro Patch relied on the advice of legal counsel in marking its products, (2) the effect of <u>Clontech</u> in reassessing the legal advice previously given by Pro Patch's counsel, and (3) controverted issues in trial, such as Pro Patch's good faith. Counsel shall first approach the bench before presenting evidence or argument to the jury on what the law was before <u>Clontech</u>.

4.   <u>Miscellaneous Evidentiary Issues</u>

Additionally, Pro Patch seeks to preclude any evidence of or reference to the following:

a)   the Court's April 21, 2006 memorandum and order;

b)   damages arising outside of DP Wagner's customer base;

c)   Pro Patch's market share or market power, or Pro Patch's size relative to that of DP Wagner;

d)   events that occurred outside the statute of limitations;

e)   marking of products done by Pro Patch's customers;

f)   pretrial motions or rulings in this case;

g)   documents or information requested but not previously disclosed to Pro Patch during discovery; and

h)   mediation, settlement offers, negotiations, or the like.

The motion in limine will be granted with respect to items a, f, g, and h, and counsel will approach the bench before referring to these items.  The motion is otherwise denied, and the Court will rule on the remaining items if and when objections are made to any such evidence at trial.

D.   <u>DP Wagner's Motion in Limine to Exclude Defendant's Witnesses Pursuant to Federal Rule of Civil Procedure 37</u>

According to DP Wagner, Pro Patch lists in its pretrial order three live witnesses who were not previously disclosed to DP Wagner in this case and who have never been deposed by either party.  DP Wagner notes that one of the witnesses, Mr. Kicack, was never mentioned in discovery by either party.  DP Wagner argues that the nondisclosure of these witnesses violates Federal Rule of Civil Procedure 26, and DP Wagner therefore moves to exclude the witnesses in accordance with Rule 37(c).  *See* FED. R. CIV. P.

14

37(c)(1)(prohibiting the introduction of evidence that, without substantial justification, has not been disclosed as required by Rule 26(a) and (e) unless the failure to disclose is harmless). DP Wagner argues that it would be prejudiced if these witnesses are permitted to testify because it has not deposed these witnesses, would need documentary discovery from these third parties in order adequately to prepare to cross-examine them at trial, and would need to examine the witnesses' knowledge and qualifications to the extent these witnesses are being offered as experts. In sum, DP Wagner argues that the purpose of Rules 26 and 37 is to avoid surprise and prevent trial by ambush, and Pro Patch's behavior is wholly at odds with these rules.

Pro Patch has filed no response to DP Wagner's motion, and, in accordance with Local Rule 7.4, the motion is deemed unopposed. The motion will therefore be granted, and Pro Patch will not be permitted to call at trial any witness not disclosed to DP Wagner during discovery.

E.  <u>DP Wagner's Motion in Limine</u>

DP Wagner also moves to exclude any evidence, statements, or arguments regarding: (1) its voluntary dismissal of its antitrust and tortious interference claims; (2) Paul Wagner's ownership interest in a separate company, Cole and Ashcroft; and (3) evidence that Pro Patch did not produce in discovery, including witnesses

that it did not name in disclosures or otherwise make known to DP Wagner during discovery.  Pro Patch has not filed a response in opposition to DP Wagner's motion in limine, and it is deemed unopposed under Local Rule 7.4.  The motion in limine will be granted with respect to items 1 and 3; the Court will rule on item 2 if and when objection is made to any such evidence at trial.

F.   Pro Patch's Motion in Limine for a Subsequent Trail, if Necessary, on Exemplary or Punitive Damages

Pro Patch requests that the Court bifurcate the issue of exemplary or punitive damages.  *See* FED. R. CIV. P. 42(b) (providing that a court may bifurcate any claim or separate issue in a trial in order to promote convenience or to avoid prejudice).  The motion will be granted.

Accordingly, it is

ORDERED that Pro Patch Systems, Inc.'s Motion in Limine on DP Wagner's Lanham Act and Common Law Unfair Competition Claims or, in the Alternative, and Motion to Certify Interlocutory Appeal and Stay Proceedings (Document No. 51), is DENIED.  It is further

ORDERED that Pro Patch's Motion in Limine (Document No. 53) is GRANTED IN PART as set forth above and is otherwise DENIED, and Pro Patch Systems, Inc.'s Motion in Limine to Bifurcate (Document No. 52) is DENIED.  It is further

16

ORDERED Motion in Limine for Subsequent Trial, if Necessary, on Exemplary or Punitive Damages (Document No. 63) is GRANTED.  It is further

ORDERED that DP Wagner Manufacturing Inc.'s Motion in Limine to Exclude Pro Patch's Witnesses Pursuant to Rule 37 (Document No. 55) is GRANTED, and DP Wagner's Motion in Limine (Document No. 56) is GRANTED IN PART as set forth above and is otherwise DENIED.

### New Docket Call Date

This case is reset for Docket Call on **September 8, 2006, at 4:00 p.m.**

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 9th day of June, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE